UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARCEL ST. CHARLES,

        Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General, et al.,

        Respondents.
_____

**DECISION AND ORDER**

6:20-CV-06061 EAW

## INTRODUCTION

*Pro se* petitioner Marcel St. Charles ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility in Batavia, New York, seeks a *writ of habeas corpus* pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner contends that he is detained pursuant to 8 U.S.C. § 1225(b), and that he is entitled to release, or in the alternative, a bond hearing. (*Id.* at 10; Dkt. 8 at 11-13).

For the reasons that follow, the Court finds that Petitioner is detained pursuant to 8 U.S.C. § 1225(b). The Court further finds that Petitioner is not entitled to either a bond hearing or release and accordingly denies the petition.

## BACKGROUND

### I.    Factual Background

Petitioner is a native and citizen of Haiti. (Dkt. 6-1 at ¶ 5). He first entered the United States without inspection on or about May 15, 2007, by paying a smuggler to

transport him from the Dominican Republic to Saint John, one of the United States Virgin Islands.  (*Id.*).  Although Petitioner was initially subject to expedited removal under 8 U.S.C. § 1225(b), he was interviewed and found to have a credible fear of return to Haiti. (*Id.* at ¶ 6).  Consequently, Petitioner was referred to the Batavia Immigration Court for formal removal proceedings pursuant to 8 U.S.C. § 1229a.  (*Id.*).  On May 30, 2008, an immigration judge ("IJ") ordered Petitioner removed from the United States to Haiti and denied Petitioner's applications for asylum and withholding of removal.  (*Id.* at ¶ 7).

Petitioner appealed the IJ's order to the Board of Immigration Appeals ("BIA"), which dismissed his appeal on March 27, 2009.  (*Id.* at ¶ 8).  Petitioner then filed a motion to reopen and reconsider the March 2009 decision before the BIA, but that motion was denied.  (*Id.*).  Petitioner then requested that the BIA reconsider his prior motion to reconsider, which was also denied.  (*Id.*).  On May 20, 2010, Petitioner was granted Temporary Protected Status ("TPS") by United States Citizenship and Immigration Services ("USCIS").  (*Id.* at ¶ 9).

On August 4, 2017, Petitioner fled to Canada in an attempt to seek asylum.  (*Id.* at ¶ 10).  On May 11, 2019, Petitioner reentered the United States by crossing the border near the town of Champlain, New York.  (*Id.* at ¶ 11).  At approximately 1:50 a.m., Border Patrol agents were notified that there was a subject walking southbound on a road that dead ends at the United States-Canada Border and is known for illegal entry by immigrants. (Dkt. 6-2 at 28).  The agents apprehended Petitioner approximately a half mile south of the border and took him to a border patrol station.  (*Id.* at 28-29).  Petitioner was not granted bond and the United States Attorney's Office approved prosecution of Petitioner for

illegally entering the United States in violation of 8 U.S.C. § 1326.  (Dkt. 6-1 at ¶ 11).  Petitioner was remanded to Clinton County Jail and an immigration detainer was lodged with that facility such that Petitioner could be taken into immigration detention upon completion of his criminal proceedings.  (*Id.*).

Upon his reentry on May 11, 2019, DHS reinstated Petitioner's prior order of removal and issued a Warrant of Removal/Deportation for Petitioner.  (*Id.* at ¶ 12).  On June 21, 2019, Petitioner pleaded guilty to violating 8 U.S.C. § 1326(a) and was sentenced to time served (42 days).  (*Id.* at ¶ 13; Dkt. 6-2 at 39).  On July 9, 2019, DHS issued another Warrant of Removal/Deportation as a result of Petitioner's prior order of removal, which was affirmed by the BIA.  (Dkt. 6-1 at ¶ 14).  DHS contacted the Embassy of Haiti, requesting travel documents be supplied in order to effectuate Petitioner's removal.  (*Id.*).

On or about July 17, 2019, Petitioner received USCIS's decision denying his Application for Temporary Protected Status and revoking his previously granted TPS.  (*Id.* at ¶ 15).  USCIS noted that Petitioner had failed to maintain his continuous residence and physical presence in the United States because he had departed the United States to Canada in August 2017.  (*Id.*).  USCIS also noted that Petitioner was ineligible because he was subject to a reinstated order of removal and due to his felony conviction for re-entering the United States illegally.  (*Id.*).  Because there is no record of Petitioner appealing this decision, the decision was rendered final.  (*Id.*).

On July 30, 2019, after expressing fear of persecution or torture, Petitioner was interviewed by an immigration officer and was found to have a facially credible fear.  (*Id.* at ¶ 16).  Petitioner was then referred to an IJ for consideration of withholding of removal

only pursuant to 8 C.F.R. § 208.31(e).  On August 6, 2019, DHS served Petitioner with a Notice of Custody Determination, advising him that he would be detained pending a final administrative determination in his immigration case.  (*Id.* at ¶ 17).  Petitioner requested that an IJ review the DHS determination.  (*Id.*).

On August 26, 2019, Petitioner appeared with his counsel and interpreter before an IJ.  (*Id.* at ¶ 18).  At the request of Petitioner's counsel, the IJ adjourned the withholding-only and custody hearings until September 30, 2019, so that Petitioner could file a Form I-589, Application for Asylum and for Withholding of Removal.  (*Id.*).  At the September 30, 2019, custody hearing, Petitioner appeared with his counsel and interpreter.  (*Id.* at ¶ 19).  The IJ denied bond, finding that Petitioner presented a risk of flight.  (*Id.*).  Petitioner submitted his Form I-589 to the IJ, and his withholding-only proceeding was adjourned to December 11, 2019, for trial.  (*Id.*).

On October 28, 2019, the BIA received Petitioner's appeal of the IJ's denial of bond.  (*Id.* at ¶ 20).  As a result, the IJ issued a written decision dated November 14, 2019, finding that Petitioner did not meet his burden of proof to establish that he was not a risk of flight.  (*Id.*).  The IJ noted that although Petitioner had a friend willing to sponsor him and a sister who was a United States citizen, Petitioner posed a risk of flight by fleeing to Canada when it appeared he would be subject to removal and by later illegally reentering the United States.  (*Id.*).

On November 20, 2019, DHS received a Motion to Continue and a Motion to Compel Document Production from Petitioner's counsel.  (*Id.* at ¶ 21).  DHS served oppositions to both motions on November 26, 2019.  (*Id.*).  On December 11, 2019,

Petitioner appeared for his withholding-only proceeding with his counsel, and an interpreter was present. (*Id.* at ¶ 22). The IJ denied both motions, but granted Petitioner's counsel's request for a continuance and adjourned the hearing until February 28, 2020. (*Id.*).

On January 23, 2020, the IJ granted DHS's motion to pretermit Petitioner's applications for relief from removal. (*Id.* at ¶ 23). The IJ noted that Petitioner, as a previous asylum applicant, could not apply for asylum a second time without proving the existence of changed circumstances which materially affect his eligibility for asylum pursuant to 8 U.S.C. § 1158(a)(2)(D). (*Id.*). On January 27, 2020, the BIA dismissed Petitioner's appeal of the IJ's order denying bond. (*Id.* at ¶ 24). The BIA concluded that the IJ's decision was proper in light of Petitioner's history of unlawfully entering the United States and the speculative nature of his claim for relief from removal. (*Id.*). On February 6, 2020, the IJ issued an order denying DHS's Motion to Terminate Withholding-Only Proceedings, clarifying that the prior order granting the Motion to Pretermit only applied to Petitioner's application for asylum. (*Id.* at ¶ 25). The IJ further noted that Petitioner could continue to seek relief from removal through withholding of removal and under the Convention Against Torture ("CAT"). (*Id.*).

On February 28, 2020, Petitioner appeared at his withholding-only proceeding with counsel. (*Id.* at ¶ 26). Petitioner's counsel moved to withdraw due to a conflict with her client, and the IJ granted the motion. (*Id.*). To allow Petitioner an opportunity to retain new counsel, the matter was rescheduled for March 16, 2020. (*Id.*). On March 16, 2020, Petitioner requested a continuance. (*Id.*). The IJ granted the request and rescheduled the

hearing for April 20, 2020. (*Id.*). The record before the Court does not reflect any further developments in Petitioner's withholding-only proceedings.

## II. Procedural Background

Petitioner filed his petition *pro se* on January 27, 2020. (Dkt. 1). Respondents filed their answer and return in response to the petition on March 23, 2020 (Dkt. 6), and Petitioner filed his reply on April 2, 2020 (Dkt. 8). On June 25, 2020, the Court issued a Text Order directing the parties to submit supplemental briefing as to the impact on the petition, if any, of the Supreme Court's decision in *Department of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020). On July 27, 2020, Respondents filed their supplemental briefing. (Dkt. 10). That same day, the New York Civil Liberties Union Foundation and the International Refugee Assistance Project (collectively "Amici") filed a motion seeking leave to file an *amici curiae* brief in support of Petitioner. (Dkt. 11). The Court granted the motion and directed any briefs in response to the *amici curiae* brief be filed on or before August 5, 2020. (Dkt. 12). Amici filed their brief on July 28, 2020 (Dkt. 14), and no briefs were filed in response.

## DISCUSSION

### I. Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges

to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

## II.     Statutory Basis for Petitioner's Detention

Petitioner argues that the Government is detaining him pursuant to 8 U.S.C. § 1225(b), and that as a result he is entitled to a bond hearing wherein the Government bears the burden of proving by clear and convincing evidence that Petitioner should be detained. The Government, while contending that the petition should be denied even if Petitioner is detained pursuant to § 1225(b), makes an alternative argument that Petitioner is detained pursuant to 8 U.S.C. § 1231. For the following reasons, the Court finds that Petitioner is detained pursuant to § 1225(b).

"Section 1225 applies to two types of aliens: 'arriving aliens' and 'certain other aliens.'" *Dorval v. Barr*, No. 6:19-CV-06545-MAT, 2019 WL 5079566, at *3 (W.D.N.Y. Oct. 10, 2019); *see* 8 U.S.C. § 1225(b) ("Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled."). Regulations define an arriving alien as:

> [A]n applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States

waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport.

8 C.F.R. § 1001.1(q).  Pursuant to § 1225, "arriving aliens" are subject to expedited removal proceedings "without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution."  8 U.S.C. § 1225(b)(1)(A)(i).  If the "arriving alien" does so indicate, "the officer shall refer the alien for an interview by an asylum officer."  *Id.* § 1225(b)(1)(A)(ii).

With regards to "certain other aliens," § 1225(b)(1)(A)(iii), titled "Application to certain other aliens," states:

> (I) In general
> The Attorney General may apply clauses (i) and (ii) of this subparagraph to any or all aliens described in subclause (II) as designated by the Attorney General.  Such designation shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time.
>
> (II) Aliens described
> An alien described in this clause is an alien . . . who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

When the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, was passed, the Attorney General's authority under § 1225(b)(1)(A)(iii)(I) was delegated to the Secretary of the Department of Homeland Security ("DHS").  In 2004, DHS used this authority to designate as "certain other aliens" the following:

> Aliens determined to be inadmissible under sections 212(a)(6)(C) or (7) of the Immigration and Nationality Act who are present in the U.S. without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, who are encountered by an immigration

- 8 -

> officer within 100 air miles of the U.S. international land border, and who have not established to the satisfaction of an immigration officer that they have been physically present in the U.S. continuously for the fourteen-day (14-day) period immediately prior to the date of encounter.

Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01, 48879 (Aug. 11, 2004) (hereinafter "Certain Other Aliens Rule"). In other words, aliens who unlawfully enter the United States and are detained within 14 days of entry and within 100 miles of the border are treated the same as "arriving aliens" under the current statutory and regulatory scheme.

If an immigration officer determines during an interview that either an "arriving alien" or "certain other alien" has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). This detention places aliens in full removal proceedings pursuant to 8 U.S.C. § 1229a. 8 U.S.C. § 1225(b)(2)(A). If the asylum officer finds the alien does not have a credible fear, the alien can request review of that determination by an IJ. 8 C.F.R. § 1208.30(g). Additionally, "[a]liens detained pursuant to Section 1225(b) may be awarded discretionary parole into the country by the Attorney General, pending their application to be admitted or for asylum." *Dorval*, 2019 WL 5079566, at *5; *see* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(a), (b)(5).

Given the statutory framework with respect to § 1225(b) described above, the Court concludes that Petitioner is a "certain other alien" detained pursuant to § 1225(b). Petitioner first illegally entered the United States on May 15, 2007, by paying a smuggler to take him from the Dominican Republic to Saint John. (Dkt. 6-1 at ¶ 5). That same day, Petitioner was detained under § 1225(b). (*Id.*). Petitioner next illegally reentered the

United States by crossing the United States border with Canada on May 11, 2019. (Dkt. 6-2 at 28). At approximately 1:50 a.m., Petitioner was apprehended just south of the border and taken to a border patrol station. (*Id.* at 28-29). Petitioner was detained within 100 miles of the border and within 14 days of his entry both times into the United States. (Dkt. 6-1 at ¶¶ 5-6, 11; Dkt. 6-2 at 28-29); *see Singh v. Barr*, No. 19-CV-1208, 2019 WL 6609312 (W.D.N.Y. Dec. 3, 2019) (holding alien "apprehended at the United States-Mexico border within a day of his illegal entry" was detained under § 1225). Accordingly, the Court finds Petitioner is detained under § 1225(b).

Respondents contend the Court should find that Petitioner is detained pursuant to § 1231 of the INA, which addresses detention of "immigrants in the 'removal period,' the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the alien.'" *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018) (quoting 8 U.S.C. § 1231(a)(1)(A)).

Petitioner is presently in withholding-only proceedings and is subject to a reinstated removal order. (Dkt. 6-12 at ¶¶ 12, 26). In 2016, the Second Circuit decided, as a matter of first impression and in the context of an individual detained pursuant to 8 U.S.C. § 1226(a), that a reinstated removal order is not "administratively final" during the pendency of withholding-only proceedings, and that accordingly, § 1231 did not govern detention under such circumstances. *Guerra v. Shanahan*, 831 F.3d 59, 62 (2d Cir. 2016). Respondents contend that the Second Circuit's holding in *Guerra* was based on a "mistake in law" (Dkt. 6-4 at 20), and ask the Court to follow the law of the Third and Ninth Circuits, which have held that aliens in withholding-only proceedings are subject to final orders of

removal, *see Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 215-16 (3d Cir. 2018); *Padilla-Ramirez v. Bible*, 882 F.3d 826, 830-31 (9th Cir. 2017).[1] However, "[t]his Court is bound to follow controlling Second Circuit precedent unless that precedent is overruled or reversed—even if . . . the precedent has been criticized by . . . certain courts in other Circuits." *Unicorn Bulk Traders Ltd. v. Fortune Mar. Enters., Inc.*, No. 08 CIV. 9710(PGG), 2009 WL 125751, at *2 (S.D.N.Y. Jan. 20, 2009); *see United States v. Emmenegger*, 329 F. Supp. 2d 416, 436 (S.D.N.Y. 2004) ("[T]his Court is obliged to follow [Second Circuit] precedent until it is overruled by a higher court or until Supreme Court precedent renders it untenable."). Respondents do not offer any meaningful distinction between the facts of the instant matter and those in *Guerra*, nor does the Court's review so find. Accordingly, the Court determines that pursuant to *Guerra*, Petitioner's reinstated removal order is not administratively final because his withholding-only proceedings are not yet completed, and that his detention is governed by § 1225(b), not § 1231. *See Perry v. Searls*, No. 19-CV-6332 CJS, 2020 WL 2319867, at *3 (W.D.N.Y. May 11, 2020) (finding that "although DHS had issued a removal order, the order was not 'final,' due to the pendency of the 'withholding only' proceeding").

## III. Due Process

The Court turns next to the issue of whether Petitioner's ongoing detention is constitutionally impermissible. This Court's recent decision in *Gonzales Garcia v. Rosen*,

---

[1] The Fourth Circuit has agreed with the Second Circuit and found that a reinstated removal order is not administratively final for purposes of § 1231. *See Guzman Chavez v. Hott*, 940 F.3d 867, 873 (4th Cir. 2019).

No. 6:19-CV-06327 EAW, __ F. Supp. 3d __, 2021 WL 118933 (W.D.N.Y. Jan. 13, 2021), addresses the issue of the process due to individuals who are apprehended shortly after entering the country unlawfully and detained pursuant to § 1225(b). In *Gonzales Garcia*, the Court concluded that the Supreme Court's decision in *Thuraissigiam*, including its reaffirmance of *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), requires this Court to treat inadmissible aliens who are detained shortly after unlawfully entering the United States as being on the threshold of entry and thus entitled only to the process authorized by Congress. *Id*. at *3-4.

Amici argue that *Thuraissigiam* does not require denial of the petition in this case because: (1) *Thuraissigiam* does not apply to detention challenges; (2) Petitioner should be deemed to have effected a legal entry into the United States because he passed a credible fear interview; and (3) Petitioner should be treated differently than the petitioner in *Thuraissigiam* because he previously had TPS and because he maintains significant ties to the United States. (Dkt. 14). The Court considered and rejected the first two arguments made by Amici in *Gonzales Garcia*, and it is unpersuaded by them here for the same reasons set forth in detail in that decision. As the Court explained in *Gonzales Garcia*, "[w]hile *Thuraissigiam* was decided in the admission context, it cited and reaffirmed the continuing vitality of *Mezei*, which addressed the issue of detention." 2021 WL 118933, at *4. Further, "Petitioner having passed a credible fear interview" does not "take[] him outside the category of an inadmissible alien on the threshold of initial entry." *Id*. at *6.

The Court further concludes that Petitioner's previous TPS does not entitle him to additional process. "Temporary protected status affords eligible aliens protection from

- 12 -

removal upon a determination by the Attorney General that conditions in their own country prevent their safe return." *Del Cid-Nolasco v. Holder*, 388 F. App'x 18, 19 (2d Cir. 2010). There is a circuit split on whether a grant of TPS constitutes an "admission" into the United States, with the Ninth and Sixth Circuits concluding that it does and the Third and Eleventh Circuit concluding that it does not. *Compare Ramirez v. Brown*, 852 F.3d 954, 961 (9th Cir. 2017) and *Flores v. U.S. Citizenship & Immigration Servs.*, 718 F.3d 548, 551-53 (6th Cir. 2013) *with Sanchez v. Sec'y United States Dep't of Homeland Sec.*, 967 F.3d 242, 251 (3d Cir. 2020), *cert. granted sub nom. Sanchez v. Wolf*, No. 20-315, 2021 WL 77237 (U.S. Jan. 8, 2021), and *Serrano v. U.S. Attorney Gen.*, 655 F.3d 1260, 1265 (11th Cir. 2011). The Second Circuit has not decided this issue.

Here, the Court will assume for the sake of argument that when Petitioner was granted TPS in 2010, it constituted an admission to the United States. However, that does not end the Court's inquiry, because Petitioner's TPS clearly did not afford him the right to depart the United States by fleeing to Canada in 2017, nor to reenter the United States nearly two years later. To the contrary, with limited exceptions not applicable here, a TPS recipient is required to maintain continuous physical presence in this country. *See* 8 U.S.C. § 1254a(c)(3) (TPS shall be withdrawn from any alien who "has not remained continuously physically present in the United States from the date the alien first was granted temporary protected status"). When Petitioner unlawfully entered the United States in 2019 and was apprehended shortly thereafter, he was, under the definition set forth in *Thuraissigiam*, on the threshold of initial entry into the United States.

Amici's citation to cases involving lawful permanent residents ("LPRs") are inapposite. Unlike individuals with TPS, LPRs are permitted to travel abroad and have the right to reenter the United States upon their return. As such, "[o]rdinarily, an LPR who reenters the country is not considered an alien seeking admission and, therefore, cannot be detained pursuant to Section 1225(b)." *Brissett v. Decker*, 324 F. Supp. 3d 444, 449 (S.D.N.Y. 2018).

Further, the cases recognizing a due process right for LPRs returning from abroad have been careful to note the briefness of their absence from the United States. *Id.* at 450 (LPRs are entitled to due process protections "when returning from a brief trip abroad"); *see also Landon v. Plasencia*, 459 U.S. 21, 33 (1982) (acknowledging that a "returning resident alien is entitled as a matter of due process to a hearing on the charges underlying any attempt to exclude him," but explaining that such entitlement may be lost "[i]f the permanent resident alien's absence is extended" (citations omitted)); *Perez v. Aviles*, 188 F. Supp. 3d 328, 332 (S.D.N.Y. 2016) (due process rights extend to "aliens previously granted lawful permanent residence, at least where the alien's absence from the country is brief"); *Arias v. Aviles*, No. 15-CV-9249 (RA), 2016 WL 3906738, at *6 (S.D.N.Y. July 14, 2016) (explaining that the Supreme Court has drawn "a distinction between an LPR only briefly absent from the United States who can assert due process rights, and one whose absence is extended and thus may lose his entitlement" to the same protections (quotation and alterations omitted)). Here, Petitioner was absent from the United States for almost two years—and thus, even if he had been an LPR, it is questionable that he would be entitled to additional process given the length of his absence from this country.

Finally, while Petitioner undoubtedly developed ties to the United States during the time he resided here with TPS, that fact does not, under binding Supreme Court precedent, entitle him to additional process. The petitioner in *Mezei* had lawfully lived in the United States for 25 years before leaving for 19 months, yet the Supreme Court held that his "prior residence" in this country did not change the analysis: "the legal incidents of an alien's entry remain unaltered whether he has been here once before or not. He is an entering alien just the same, and may be excluded if unqualified for admission under existing immigration laws." 345 U.S. at 213. As such, like the petitioner in *Gonzales Garcia* was not "entitled to procedural protections beyond those provided by statute," 2021 WL 118933, at *6, this Court is constrained to find that Petitioner does not have a constitutional right to any additional procedure. Accordingly, the Court cannot order Respondents to provide him with a bond hearing, nor can it order his release. The petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition (Dkt. 1) is denied. The Clerk of Court is instructed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:    January 22, 2021
         Rochester, New York